**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| HEATHER CROUCH, ) | |
| ) | CASE NO.   3:10-CV-01010 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|   Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Heather Crouch ("Crouch") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and REMANDED for further proceedings consistent with this opinion.

**I.  Procedural History**

On May 19, 2005, Crouch filed an application for POD, DIB, and SSI alleging a

disability onset date of March 10, 2005.  Her application was denied both initially and upon reconsideration.  Crouch timely requested an administrative hearing.

On May 5, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Crouch, represented by counsel, testified.  William J. Kiger testified as an impartial vocational expert ("VE").  On June 24, 2008, the ALJ found Crouch was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age twenty-nine (29) at the time of her administrative hearing, Crouch is a "younger" person under social security regulations.  *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c).  Crouch has a high school diploma, attended college for two years, and performed past relevant work as a home health aide and a licensed practical nurse (LPN).  (Tr. 387-88.)

### *Hearing Testimony*

At the hearing, Crouch testified to the following:

- She is 5'7" tall and weighs 300 pounds.  (Tr. 385.)

- She is married with two children aged six and seven.  (Tr. 386.)

- She has a driver's license, but did not drive to the hearing.  (Tr. 386.)  She drives no more than one-hundred miles per week.  (Tr. 397.)

- In 1997, she was in a car accident that resulted in cracked lumbar vertebrae requiring the insertion of Harrington rods.  (Tr. 389.)

- She re-injured her back after slipping and falling on ice in January of 2005.  (Tr. 388-89.)

- She is currently undergoing pain management and has been taking OxyContin and

      Percocet for about two and a half years. (Tr. 390.) She also takes Lexapro, Phenergan, and Ambien. (Tr. 391.)

- She sees a psychiatrist, Dr. Bruno, every two months. (Tr. 391-92.) She was hospitalized in August of 2004 for 24 to 36 hours for psychological evaluation. (Tr. 392.)

- On a typical day, she prepares her children for school, drives them there, and tries to "do what [she] can do around the house as far as chores and ... errands, stuff like that." (Tr. 394-95.) She picks up around the house, assists with cooking, and does most of the errands, but she does not dust, vacuum, wash dishes, or scour the bathroom. (Tr. 398.)

- She has a circle of friends that she sees nearly every day. (Tr. 398.)

- She spends most of her waking hours either in bed or on the couch to relieve her pain. (Tr. 398-99.) She reads a lot and watches television. *Id*.

- She suffers from osteoporosis and osteoarthritis. (Tr. 404.)

- She has been diagnosed with bipolar disorder, borderline personality, co-dependency, and depression. (Tr. 406.)

- The pain in her back is constant, which radiates down to her leg two to three times per month. (Tr. 409-410.) Although her medication works well at first, she experiences breakthrough pain on a daily basis, for which she takes Percocet every four to six hours. (Tr. 410.)

- She experiences crying spells a couple of times a month. They last anywhere from a few hours to three days. (Tr. 410.)

- She "has some rage" and experiences mood swings. (Tr. 411.)

- She lays down for three to four hours daily. She can sit for about fifteen minutes, stand for ten minutes, and walk anywhere from fifteen to thirty minutes at a time. (Tr. 413.)

After having the VE summarize Crouch's work history, including the exertional and skill levels involved, the ALJ asked the following hypothetical question:

> Please assume a hypothetical younger individual with more than a high school education and the same past relevant work as the claimant has. The residual functional capacity to perform at the light exertional level which does not require

3

> climbing ladders, ropes, or scaffolds, or more than occasional climbing of ramps and stairs or more than occasional balancing, stooping, kneeling, crouching, or crawling, and does not require the ability to understand, recall, or carry out detailed instructions.

(Tr. 417.)

The VE testified that such an individual could not perform Crouch's past relevant work, but could do some light, unskilled jobs. (Tr. 417-18.) The VE offered the following examples: sorter, counter clerk, and assembler. (Tr. 418.) The ALJ asked if there were any jobs with the same restrictions if the hypothetical person was also limited to sedentary work. *Id*. The VE responded in the affirmative, and identified account interviewer, information clerk, and table worker jobs as falling in that category. *Id*. The ALJ asked if these positions could be performed with a sit/stand option. *Id*. The VE again responded in the affirmative, but indicated that it would be more difficult for a table worker. *Id*.

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Crouch was insured on her alleged disability onset date, March 10, 2005, and remained insured through September 30, 2007.  (Tr. 21.)  Therefore, in order to be entitled to POD and DIB, Crouch must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

## IV.  Summary of Commissioner's Decision

The ALJ found Crouch established medically determinable, severe impairments, due to degenerative disc disease and depression.  However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Crouch was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  The ALJ then used the Medical

---

impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

5

Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Crouch is not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

6

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

### VI. Analysis

*Treating Physician*

In her sole assignment of error, Crouch asserts that the ALJ erred when he failed to accord proper weight to the opinion of Philip R. Masser, M.D., her treating physician. (Doc. No. 17 at 2.) Specifically, Crouch argues that the ALJ failed to mention Dr. Masser's functional capacity assessment, dated April 20, 2007, or explain why the opinion was not given controlling weight. *Id*.

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)); *accord* 20 C.F.R. § 416.927. "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be

rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 F. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). According to 20 C.F.R. § 416.927(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of

---

[2] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

On April 20, 2007, Dr. Masser, who began treating Crouch on March 29, 2004 (Tr. 241), completed a Residual Physical Capabilities Questionnaire. (Tr. 314-17.) Dr. Masser indicated that he treated Crouch for chronic back pain, osteoporosis, compression fractured vertebra with Harrington rod placement, and anxiety/depression. (Tr. 314.) He found that Crouch could lift and/or carry no more than ten pounds, and could alternatively sit/stand for one hour in an eight-hour workday. Dr. Masser checked the box indicating that Crouch could not perform sedentary or light work even on a part-time basis. (Tr. 315.) He further indicated that Crouch could not bend, twist from side to side, reach above the shoulder, squat, kneel, or climb stairs and ladders. (Tr. 316.) He also suggested that Crouch should avoid working near unprotected heights, working around moving machinery, and work requiring substantial outdoor activity in cold or rainy weather. *Id*.

> The ALJ's opinion makes only minimal reference to Dr. Masser's treatment:
>
> Dr. Masser saw the claimant from March 2005 to August 4, 2005, for follow-up of her problems secondary to low back pain. On examination March 23, 2005, the claimant walked with an antalgic gait and rather stooped. She had ongoing tenderness over the mid-thoracic to upper lumbar area. By August 4, 2005, her pain was much better controlled.
>
> (Tr. 25.)

9

The Commissioner concedes that Crouch continued treatment with Dr. Masser throughout 2006 and early 2007. (Doc. No. 19 at 5.) Nonetheless, the ALJ made no reference to Dr. Masser's aforementioned April 2007 assessment, or any treatment beyond August 4, 2005. In fact, the Commissioner also appears to concede that the ALJ rejected or ascribed only little weight to Dr. Masser's opinion, as his argument for affirming the Decision centers entirely upon the proposition that, "in some instances, an ALJ may not need to expressly give good reasons to reject or give little weight to a treating physician's opinion." *Id. citing Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

The Commissioner's reliance on *Wilson* is misplaced. First, the *Wilson* court, consistent with above quoted authority, found that the ALJ violated the agency's own procedural regulations by failing to articulate the reasons for discounting the opinion of Wilson's treating physicians despite the fact that substantial evidence otherwise supported the Decision. 378 F.3d at 543-44. The *Wilson* court explained that "reason-giving" requirement serves three purposes: (1) it helps explain to a claimant the reason why an administrative decision may be at odds with his or her physician's assessment; (2) it ensures that the ALJ actually applies the treating physician rule; and (3), it permits meaningful appellate review of an ALJ's application of said rule. *Id.* at 544.

The Commissioner essentially argues that there is substantial evidence in the record that would have allowed the ALJ to reject the opinion of Dr. Masser, and that the ALJ's failure to give a reason for rejecting the opinion was merely harmless error. (Doc. No. 19 at 9-11.) The Commissioner argues that Dr. Masser's opinion was not supported by any clinical signs or diagnostic tests, that it was inconsistent with non-examining state agency physician assessments

10

offered two years prior, and that, in the Commissioner's opinion, it is also inconsistent with the findings of other treating physicians. *Id*. This Court finds these arguments not well taken. The deficiency in the Commissioner's argument is aptly explained by the *Wilson* Court:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. "[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Mazaleski v. Treusdell*, 183 U.S. App. D.C. 182, 562 F.2d 701, 719 n.41; *see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 102 F.3d 1385, 1390 (5th Cir. 1996). To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with §1527(d)(2), would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to "set aside agency action . . . found to be . . . without observance of procedure required by law." Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001).

*Wilson*, 378 F.3d at 546.

Instead of heeding the *Wilson* decision, the Commissioner seizes upon the Court's suggestion that there *might* be an instance where there is a *de minimis* violation "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Id*. at 547. While there may be a case where a treating physician's opinion is so contrary to the record that a failure to explain the rejection of such opinion is harmless, this is not such a case. Dr. Masser's opinion was formed after a lengthy period of treatment, and was based upon undisputed injuries and impairments that are substantiated by the record.   The ALJ's decision recognized that Crouch had degenerative disc disease, spinal injuries requiring Harrington rods, and was severely obese. (Tr. 21-22.) Moreover, the ALJ also found that "[t]he record does not contain any inconsistencies that bring the claimant's credibility into serious question ... [and

11

that] the claimant's subjective allegations regarding the nature and severity of [her] impairments [is] generally in accord with the medical evidence of record."[3] (Tr. 25.) In conclusion, the Court cannot agree with the Commissioner's argument that Dr. Masser's opinion is so patently deficient that the ALJ's failure to comply with the treating physician rule is excusable.

As such, Crouch's first assignment of error is well taken and this matter is remanded for a new decision that adequately explains the weight accorded to the various medical sources of record in compliance with 20 C.F.R. § 404.1527.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ Greg White<br>U.S. Magistrate Judge

Date: May 27, 2011

---

[3] The ALJ, however, did not believe that Crouch's impairments "make her totally debilitated." (Tr. 25.)